UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

VESTA HOPKINSON,

                    Plaintiff,

        v.                                          Docket No.: 1:09-CV-3004
                                                              (JBW)(MDG)
PENINSULA HOSPITAL CENTER,

                    Defendant.

**MEMORANDUM OF LAW IN OPPOSITION OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Ira S. Newman
98 Cutter Mill Road
Suite 441-South
Great Neck, New York 11021
Tel: (516) 487-7375
Email: inewman@mindspring.com

*Attorney for Vesta Hopkinson*

## PRELIMINARY STATEMENT

On July 14, 2008, after seventeen years of service in the employ of Peninsula Hospital Center ("Defendant" or "Peninsula"), and at age 63, Vesta Hopkinson ("Plaintiff" or "Hopkinson") was informed by Defendant that she was being terminated. The reason given – she was allegedly sleeping while on duty. Defendant did not even provide Plaintiff an opportunity to give her side of the story before deciding to terminate her. Given the facts, Defendant likely did not even believe the allegations itself.

Plaintiff brought this action because, she believes, and the evidence tends to supports, that Defendant terminated Plaintiff, not for sleeping while on duty, but as a backdoor layoff, designed to get around her seniority rights under the her union's collective bargaining agreement and to avoid liability under the ADEA. Further Plaintiff contends that the only reason Defendant could even claim that she was being terminated for sleeping on the job, was because they failed to provide her with a reasonable accommodation for her diabetes. Had Defendant provided Plaintiff with the accommodation she had requested, Plaintiff would not have even had to rest her eyes during her shift, denying Defendant the excuse it needed to terminate her.

On a motion for summary judgment, the moving party must show that there is no genuine issue of material fact remaining. As explained below, Defendant has failed to meet this high burden.

## STATEMENT OF FACTS

For a complete statement of the undisputed and disputed facts relevant to this motion, the Court is respectfully referred to Plaintiff's Counterstatement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 (hereinafter referred to as "Pl. 56.1 Statement") and the

accompanying declaration of Ira S. Newman, with attached exhibits.  In the interest of brevity, these facts are not repeated here.

## ARGUMENT

A motion for summary judgment can only be granted where there is "no genuine issue as to any material fact and…the movant is entitled to judgment as a matter of law."  FRCP R. 56(c)(2).   Plaintiff has presented evidence that Defendant's stated reason for terminating Plaintiff, that she was purportedly sleeping while on duty, lacks credibility, and that Defendant had motivation to fire Plaintiff based her salary, a factor inexorably intertwined with her age.  As explained below, this evidence at the very least creates a genuine issue of material fact as to whether Plaintiff was terminated under circumstances giving rise to an inference of discrimination, and whether Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff.

Assuming, *arguendo,* that Defendant did terminate Plaintiff for purportedly sleeping while on duty, this only lends support to Plaintiff's alternative causes of action, that Defendant's failure to provide Plaintiff with a reasonable accommodation for her diabetes directly led to her termination.   As explained below, Plaintiff made numerous attempts to seek an accommodation that would have prevented her from suffering from drowsiness, but Defendant refused to provide Plaintiff with any such accommodation.   Had Defendant done so, she would not have been terminated.

## POINT I

### A MATERIAL ISSUE OF FACT REMAINS AS TO WHETHER DEFENDANT TERMINATED PLAINTIFF IN VIOLATION OF THE ADEA

**A.    DEFENDANT'S STATED REASON FOR TERMINATING PLAINTIFF LACKS CREDIBILITY**

Defendant's stated reason for terminating Plaintiff is that she had purportedly fallen asleep while on duty during her shift which started on July 12, 2008 (the "July 12th Shift"). Plaintiff denies that she was ever asleep, claiming instead that she had only closed her eyes for approximately one minute to rest them, and that she was alert the whole time. See **Exhibit B**,[1] p. 112-113.   As Defendant points out, the truth of whether Plaintiff was in fact asleep is not material, only the sincerity of Defendant's belief.   Contrary to what Defendant has pointed out, the circumstances surrounding Plaintiff's termination raise serious doubts as to Defendant's sincerity.

Defendant has alleged "it had to terminate Hopkinson because the Hospital cannot function and safely take care of its patients when a nurse is not acutely using all their senses all the time."  See **Exhibit D**, p. 66-67.  In fact, throughout Defendant's motion, they try to make the point that Plaintiff purportedly falling asleep while on duty created such a risk to patient safety, that they had no choice but to terminate her.  If this were to be believed, one would have to assume that, as soon as William Kolody found Plaintiff sleeping while on duty, Defendant would have relieved her from duty and taken steps to replace her with a nurse that they could trust, or to otherwise take steps to safeguard the Hospital and its patients,  but this did not happen.

After Mr. Kolody allegedly found Plaintiff asleep at 12:15 AM, she was permitted to complete her July 12th Shift, and to work a second shift from the night of July 13, 2008 through the morning of July 14, 2008, before she was terminated.  See **Exhibit B,** p. 161.  Mr. Kolody did not even take additional steps to check on Plaintiff during the July 12th Shift, waiting approximately five (5) hours before returning to the TBI Unit, more than twice as long as he

---

[1] Unless otherwise indicated, all exhibits are attached to the Declaration of Ira S. Newman, Esq.

typically goes between checking on the nurses in the TBI Unit.  See **Exhibit B,** p. 161, **Exhibit C,** p. 9.

The juxtaposition between the purported severity of the danger caused by a nurse sleeping on the job, and the Defendant failure to take any steps to mitigate this danger after purportedly finding Plaintiff asleep while on duty, severely undercuts the credibility of Defendant's claims that it sincerely believed that Plaintiff was in fact asleep.

Defendant's sincerity in its belief that Plaintiff was asleep while on duty is also undercut by its failure to follow protocol in terminating Plaintiff.  While Defendant took steps to bolster its case that Plaintiff was asleep on the job, obtaining statements from two separate witnesses to this event, no attempts were made to talk to Plaintiff about what had occurred, or to hear her side of the story until after Defendant had already decided to terminate her and informed her of the same.  See **Exhibit D**, p. 112-115.  Given Plaintiff's seventeen (17) years of service at Peninsula, one would assume that Defendant would have at least given her a chance to explain herself before terminating her if they were truly interested in accurately disciplining her, rather than just looking for an excuse.

Based on the forgoing facts, the finder of fact could certainly conclude that Defendant's purported reason for terminating Plaintiff was nothing more than a fabrication to justify an alternative motive.  As such, summary judgment cannot be granted on this point.

**B.**    **IF DEFENDANT DID NOT TERMINATE PLAINTIFF FOR THE REASON STATED, THEY MOST LIKELY TERMINATED HER BASED ON SALARY**

If we assume, as we must, that Plaintiff was not terminated for sleeping while on duty, it raises the question of why Plaintiff was actually terminated.  Given the facts of this case, if Plaintiff was not terminated for sleeping while on duty, the most likely alternative was that she

was fired in order to reduce the TBI Unit's budget, and that Defendant chose to terminate Plaintiff, rather than another nurse, due to her high salary.

Although Defendant has not admitted to formal layoffs, the record shows that Defendant has been reducing its nursing staff, including its staff in the TBI Unit. See **Exhibit C**, p. 22. Due to the pay structure under the Plaintiff's union's collective bargaining agreement, Plaintiff's experience as a Nurse RN entitled her to an additional $27,000 over the $57,500 starting salary of Nurse RNs working for Defendant. See **Exhibit F**. As a result, terminating Plaintiff represented a substantially saving for Defendant over terminating a less experienced nurse.

However, Plaintiff was, or at least should have been, protected from layoffs, due to the fact that she was the second most senior nurse in the TBI Unit. See **Exhibit B**, p. 40, **Exhibit E**, p. 17. Further, as experience is inexorably linked to age, a decision to terminate Hopkinson, or another senior nurse, on this basis constitutes a violation of the ADEA.

Given the facts that Defendant had a motivation to layoff nurses from the TBI Unit, that Defendant benefited the most from laying off an experienced nurse, such as Plaintiff, and that Defendant's purported reason for terminating Plaintiff is, at best, questionable, it would not be difficult for a finder of fact to reach the reasonable conclusion that Plaintiff was terminated based on her seniority and salary, and therefore based on her age. Mr. Kolody's discovery of Plaintiff with her eye's closed only provided Defendant with a convenient cover story for this decision.

Defendant cites *Criley v. Delta Air Lines,* 119 F.3d 102 (2d Cir. 1997) in opposition to the theory that salary based on seniority can stand as a proxy for age in an ADEA case. *Criley*, along with *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), on which it relies, have held that seniority cannot be a proxy based on age, these cases rest on the basis that while seniority is related to age, it is not identical. While most sixty-year-old employees will have more

- 5 -

experience than a most twenty-five-year-old employee, theoretically, a newly hired sixty-year-old would have less experience than a twenty-five-year-old who has worked at the same company for their entire career.

The hypothetical identified in *Criley* and *Hazen* is not possible, or at least is very unlikely given the circumstances of this case.  Here, Plaintiff had 17 years of experience as an employee of Peninsula, and an additional 10 years of prior work experience, all of which were applied to her seniority and therefore her salary.  See **Exhibit F.**  A nurse would have had to begun work at age 12 to have obtained this level of experience and seniority and still be under 40 years of age.  In Defendant's moving papers, they identify Shantia Reason as a nurse working in the TBI unit who was 23 years old at the time of Plaintiff's termination, Ms. Reason would have had to start gaining experience four years before she was even born to match Plaintiff's level of experience.  While situations may occur where an older employee has less seniority than a younger employee, it is not realistically possible for an employee under 40 to have had seniority comparable to Plaintiff.  As such, in this particular circumstance, age and seniority are inextricably linked, and a decision to terminate Plaintiff based on her seniority, and the salary directly associated therewith, should be considered to be a violation of the ADEA.

Based on the foregoing, Plaintiff has at least raise a genuine issue of material fact as to whether Plaintiff was terminated based on her age, in violation of the ADEA.

### POINT II

### A MATERIAL ISSUE OF FACT REMAINS AS TO WHETHER DEFENDANT FAILED TO PROVIDE PLAINTIFF WITH A REASONABLE ACCOMMODATION FOR HER DIABETES

Assuming, *arguendo,* that this Court accepts Defendant's contention that Plaintiff was sleeping while on duty, then it must consider that, this basis for Plaintiff's termination could

have been avoided had Defendant provided Plaintiff with a reasonable accommodation for the drowsiness brought on by her diabetes.   Defendant claims that Plaintiff's disability discrimination claims must be dismissed, on three grounds, that Plaintiff diabetes was not properly considered to be a disability, that Plaintiff did not request to be accommodated, and that there was no causal connection between Defendant's failure to accommodate Plaintiff and the conduct causing the termination.   As explained below, a genuine issue of material fact exists with respect to each of these contentions.

## A.   PLAINTIFF MADE SEVERAL REQUESTS FOR AN ACCOMMODATION FOR HER DIABETES

On at least three occasions, Plaintiff approached her managers, Mr. Kolody and Ms. McGowan, to inform them that her diabetes was making it difficult for her to stay awake, and each time they failed to discuss possible accommodations to resolve this problem.

Plaintiff first approached Ms. McGowan in or about May or June 2008 and informed her that, because of her diabetes, she was having difficulty staying awake during her shifts, and asked to go back to working eight-hour shifts.  See **Exhibit B**, p. 208-109.  Ms. McGowan rejected this request, not on the basis that Plaintiff was not disabled, or that this change would create an undue hardship for Defendant, but only that Plaintiff had recently requested a shift change.

Plaintiff next raised this issue on July 13, 2008, after Mr. Kolody purportedly caught Plaintiff sleeping while on duty.  Plaintiff informed Mr. Kolody that she had closed her eyes because she "didn't have a break and [her] diabetes was acting up."  See **Exhibit B**, p. 125.  Mr. Kolody did not respond or discuss any measures that could be taken to prevent this from occurring in the future, but instead just wrote Plaintiff up for sleeping on while on duty.

Finally, on July 14, 2008, during the meeting at which Plaintiff was informed by Ms. McGowan that she was terminated, Plaintiff again informed Ms. McGowan that she had only closed her eyes because she was not given an opportunity to take a break. Again Ms. McGowan failed to discuss the possibility of an accommodation and went through with terminating Plaintiff.

There is no requirement that an employee make a formal request for an accommodation. *See Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1286 (7th Cir. 1996). Once an employee makes it known to their employer that they need assistance due to a disability, their employers needs to "meet them half way" and engage in an interactive dialog to determine whether steps can be taken to accommodate the employee. *Id, see also, Jackan v. New York State Dept. of Labor*, 205 F.3d 562, 566 (2nd Cir., 2000). Here, Defendant entirely failed to engage in any such dialog, despite numerous attempts by Plaintiff to request an accommodation.

Defendant's argument that Plaintiff somehow waiver her right to an accommodation by not requesting to take a break during her July 12th Shift is a red herring. It is clear that Defendant actively discouraged Plaintiff, and other nurses, from taking breaks on single-nurse shifts. If Plaintiff had wanted to take a break, she would have had to call Mr. Kolody, her manager, to take over her shift. Mr. Kolody indicated that, when a nurse did ask him to cover their shift while they took a break, he would attempt to talk them out of doing so, and that the nurse would have had to be available to return to work at any moment if Mr. Kolody decided that he "had to run." See **Exhibit C**, p. 16. Given the difficulty associated with taking a break, and Ms. McGowen's complete refusal to discuss an accommodation with Plaintiff just a month or two before, Defendant cannot truly believe that Plaintiff had a reasonable option to take a break during the July 12th Shift.

- 8 -

As such, there is at least a genuine issue of material fact as to whether Defendant failed to provide Plaintiff with a reasonable accommodation as required by the ADA.

**B.   PLAINTIFF'S PURPORTED MISCONDUCT WOULD NOT HAVE OCCURRED HAD SHE BEEN PROVIDED A REASONABLE ACCOMMODATION.**

In her deposition testimony, Plaintiff clearly states that she closed her eyes because she was drowsy and fatigued, that this drowsiness and fatigue was caused by her diabetes, and that it could have been alleviated, had she been allowed to take a break.  See **Exhibit B**, pp. 111, 125. Defendant attempts to contradict this by taking Plaintiff's statement out of context.   While Plaintiff did indicate that the immediate cause of her closing her eyes was related to her contact lenses bothering her, this statement was made in the context of a larger discussion, in which she clearly indicated that she was tired, that this was caused by her diabetes, and that it could have been avoided had she been allowed to take a break.  As such, Plaintiff's alleged misconduct was directly related to Defendant's failure to provide her with an accommodation.

**C.   PLAINTIFF WAS DISABLED AS DEFINED UNDER THE AMERICANS WITH DISABILITIES ACT**

Defendant claims that there was no need to accommodate Plaintiff at all, as her diabetes did not constitute a disability under the ADA.  In reaching this conclusion Defendant uses the strict standard for determining whether an employee is disabled found in case law interpreting the ADA prior to the passage of the ADAAA.  Defendant's reason for using this strict standard, and the reason espoused in the cases cited by Defendant in support of this position, is that the ADAAA has an effective date of January 1, 2009, and therefore should not be applied retroactively to events taking place prior to this date.

This conclusion, however, ignores the Congressional Findings and Purposes found in Section 2 of the ADAAA.  See 42 U.S.C. § 12101 note.  In these findings, Congress explicitly

states that "as a result of [*Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999) and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002)], lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities." *Id.* Congress went on to state that the purpose of the ADAAA was "to carry out the ADA's objectives of providing 'a clear and comprehensive national mandate for the elimination of discrimination' and 'clear, strong, consistent, enforceable standards addressing discrimination' by reinstating a broad scope of protection to be available under the ADA." *Id.* Given the findings and purpose found in the ADAAA, it is not necessary to find that the ADAAA must be applied retroactively, only that the Supreme Court erred in its initial decisions interpreting the ADA, as passed in 1990. As such, Plaintiff does not ask that this Court apply the ADAAA directly, but rather apply the ADA, in light of Congress's actual intent, as identified in Section 2 of the ADAAA.

Given this more lenient interpretation, and the evidence that Plaintiff's diabetes both limited her diet, and, at times, made it difficult for her to stay awake, there is a genuine issue of material fact as to whether Plaintiff was disabled under the ADA. Further, without the benefit of *Sutton,* this Court should not consider whether Plaintiff would still have been drowsy had she been in full compliance with her diabetes medication.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion and reserve the question of whether Plaintiff was disabled for trial, along with such other and further relief as the Court deems just and proper.

Dated: September 23, 2010
     Great Neck, New York

                    Respectfully submitted,

Ira S. Newman (IN2747)
*Attorney for Plaintiff*
98 Cutter Mill Road
Suit 441-South
Great Neck, New York 11021
Tel: (516) 487-7375
Email: inewman@mindspring.com

To:     Glen Parker, Esq.
        Hoey King, Toker & Epstein
        *Attorneys for Defendant*
        55 Water Street, 29th Floor
        New York, NY 10041