UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VESTA HOPKINSON,<br><br>　　　　　　　　　Plaintiff,<br><br>　− against −<br><br>PENINSULA HOSPITAL CENTER,<br><br>　　　　　　　　　Defendant. | MEMORANDUM &<br>ORDER<br><br>09-CV-3004 |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ NOV 2 2 2010 ★
BROOKLYN OFFICE

**JACK B. WEINSTEIN, Senior United States District Judge:**

I. Introduction

Plaintiff Vesta Hopkinson brings suit against her former employer, Peninsula Hospital Center ("Peninsula"), alleging race, gender, age, and disability discrimination. Claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act ("ADA"), and the New York Human Rights Law ("NYHRL") § 296 are brought.

Peninsula moves for summary judgment. It argues that no material issue of fact remains as to whether Hopkinson has made a *prima facie* case of employment discrimination. Alternatively, it is contended that no rational jury could conclude that Peninsula's stated nondiscriminatory reason for plaintiff's termination—sleeping while on duty—is pretextual.

For the reasons stated below, Peninsula's motion is granted in its entirety and the complaint is dismissed with prejudice. The state claims are also dismissed for essentially the same reasons as the federal claims. There has been substantial discovery, and plaintiff's state and federal claims appear to be without merit.

1

## II. Facts

Hopkinson, an African American female aged 65, is a registered staff nurse and was employed by the defendant from October 15, 1990 until July 14, 2008. *See* Declaration of Glen H. Parker ("Parker Decl."), Ex. J ("Hopkinson Dep.") at 16-17. She has been diagnosed with diabetes, for which her doctor prescribed medication and certain dietary restrictions. *See* Parker Decl., Ex. J, Letter from Michael J. Alaimo, D.O. dated Dec. 23, 2008 ("Alaimo Letter"); *id.*, Ex. O ("Alaimo Dep.") at 24-25. Assuming strict compliance with these instructions, it was expected that after two weeks any fatigue or drowsiness would cease. *See* Alaimo Dep. at 25.

On Saturday, July 12, 2008, Hopkinson began her 7:30 p.m. to 7:30 a.m. shift at the Traumatic Brain Injury ("TBI") Unit as the only registered nurse on duty. At around 12:15 a.m. on July 13, Hopkinson's supervisor, William Kolody, observed her sleeping at her desk for three to five minutes. *See* Parker Decl., Ex. K ("Kolody Dep.") at 30-31. Two nurse assistants, Veronica Sullivan and Lily Akomaning, corroborate Kolody's account. *See* Parker Decl., Exs. D, E; *id.* Ex. M at 32, 43-46; *id.* Ex. N at 22-23, 39-40. Hopkinson maintains that she was only resting her eyes and was fully alert. *See* Hopkinson Dep. at 111-16. Hopkinson finished her shift, and completed another overnight shift beginning on the night of the 13th. Since Hopkinson had received a letter in 2004 warning her that sleeping on duty would lead to termination, *see* Parker Decl., Ex. C, Kolody provided the nurse manager, Janet McGowan, with a memorandum detailing the incident when she arrived at the hospital on the morning of Monday July 14th, as Hopkinson was finishing her shift. *See* Kolody Dep. at 46. McGowan, who had the authority to fire employees, shortly thereafter informed the plaintiff and her union representative that she was being terminated. *See* Parker Decl., Ex. L ("McGowan Dep.") at 67. The union had the right to grieve, but took no action on plaintiff's behalf.

2

## III. Law and Application to Facts

### A. Race, Age, and Sex Discrimination Claims

Employment discrimination claims based on race, age, or sex brought under Title VII, ADEA, and NYHRL are all analyzed under the framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973). *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005); *Weinstock v. Columbia Univ.*, 244 F.3d 33, 42 n.1 (2d Cir. 2000). Under this analysis, the plaintiff must establish a *prima facie* case by showing that she was terminated "under circumstances giving rise to an inference of discrimination." *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). The race and sex claims were abandoned while plaintiff was present at the November 15 full argument, but in any event they lack merit as pointed out below.

If the employer, in response, can articulate a "legitimate, nondiscriminatory reason" for the termination, the "burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 499 (internal quotation marks and citation omitted). Summary judgment is appropriate if, after construing the facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See id.* at 498; Fed. R. Civ. P. 56(c).

#### 1. Title VII and NYHRL Race and Gender Claims

Hopkinson offers no evidence showing that she was terminated under circumstances giving rise to an inference of racial or gender discrimination. She testified that she is not aware of any oral or written discrimination at Peninsula. Hopkinson Dep. at 176. She also admitted that she never complained of race discrimination during her employment. *Id.* at 244. Five of the

3

eight nurses in the TBI unit as of July 2008 were African American; all were female. *See* Aff. of Janet McGowan at ¶ 4.

Previous disciplinary action was taken reminding Hopkinson that sleeping on duty was not permitted. *See* Parker Decl., Ex. C. Plaintiff has not offered any circumstantial evidence giving rise to an inference that sleeping on duty was not the reason for the discharge. Even if she were not asleep, defendant had reasonable grounds to believe that she was. Swift discipline to protect seriously ill patients in the brain injury ward for which defendant had responsibility was reasonably appropriate. Hopkinson's counsel does not even address race or gender claims in her opposition papers and conceded at oral argument that she does not pursue these claims. *See* Pl.'s Mem. of Law in Opp. of Def.'s Mot. for Summ. Judg ("Pl.'s Mem.").

Even assuming that Hopkinson presents sufficient evidence to make out a *prima facie* case, Peninsula has articulated a legitimate, nondiscriminatory reason for her termination. Kolody found Hopkinson apparently sleeping on duty, putting brain injured patients at serious risk. *See* Kolody Dep. at 30-31. This account is corroborated by two other employees. *See* Parker Decl., Exs. D, E; *id.* Ex. M at 32, 43-46; *id.* Ex. N at 22-23, 39-40. Hopkinson offers no evidence suggesting that this reason is pretextual. She merely argues that because she was not immediately terminated, Peninsula's stated safety concerns are not truthful. *See* Pl.'s Mem. at 2-4. The evidence, however, is to the contrary. Kolody, who observed the plaintiff's misconduct, did not have the authority to terminate her. *See* Kolody Dep. at 34-36, 45. He informed McGowan, who did have this authority, shortly after her arrival at the hospital on Monday, July 14, 2008. *Id.* McGowan terminated the plaintiff immediately after learning of the July 13th incident. *See* McGowan Dep. at 67. Moreover, Hopkinson herself stated that Peninsula's financial difficulties and her seniority precipitated her termination, not unlawful discrimination.

*See* Hopkinson Dep. at 168-70. Because there is no genuine issue of fact as to whether Peninsula's stated reason for termination was pretextual, Hopkinson's Title VII and NYHRL race claims ("First and Second Claims for Relief") are dismissed.

## 2. ADEA and NYHRL Claims

Plaintiff's Third, Fourth, and Sixth Claims for relief are also dismissed. Assuming that— as plaintiff and her counsel contended on oral argument— Hopkinson was terminated because of her seniority and corresponding high salary, (for which extrinsic evidence is not offered), this is a legitimate reason for termination under both federal and state law. "Under *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611-12, (1993), an employer's concern about the economic consequences of employment decisions does not constitute age discrimination under the ADEA, even though there may be a correlation with age." *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997) (citation omitted); *see also James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000) ("Such concern with the elevated costs of senior employees does not constitute age discrimination."). Similarly, under New York Human Rights Law, financial motivations may be legitimate reasons for termination. *See Jordan v. Bates Advertising Hldgs., Inc.*, 848 N.Y.S.2d 127, 130-31 (1st Dep't 2007); *see also Laverack & Haines, Inc. v. N.Y. State Div. of Human Rights*, 88 N.Y.2d 734, 738 (1996) ("The downsizing of a company's employment rolls, due to business failings and economic setbacks, constitutes a sustainable rebuttal and explanation for the decision to terminate a particular employee . . . .").

In the instant case plaintiff's position was not filled after she was terminated. This was strong evidence supporting the non-meritorious nature of plaintiff's contention.

The evidence overwhelmingly supports Peninsula's stated reason for termination— sleeping on the job. *See, e.g.,* Kolody Dep. at 30-31.; Parker Decl., Exs. D, E, M at 32, 43-46, N

at 22-23, 39-40. Hopkinson not only fails to prove that the Peninsula's proffered reason is false, but does not offer any evidence indicating that age discrimination played any role in her discharge. Her position was not filled by a younger employee. Plaintiff's age discrimination claims are therefore dismissed.

### B. ADA Claims

Plaintiff's reasonable accommodation and wrongful termination claims ("Fifth Claim for Relief") under the ADA are dismissed. Although the ADA was recently amended, *see* ADA Amendments Act of 2008 ("ADAAA"), Pub. L. 110-325, 122 Stat. 3553 (2008), conduct occurring before January 1, 2009 is still governed by the original statute and case law. *See Ragusa v. Malverne Union Free School Dist.*, 2010 WL 249 0966, at *1 n.2 (2d Cir. June 21, 2010) (summary order) ("Although Congress amended the ADA in 2008 to expand its coverage . . . we here apply the version of the statute in effect during the time period at issue . . . ."); *Brtalik v. S. Huntington Union Free School Dist.*, 2010 WL 3958430, at *1 (E.D.N.Y. Oct. 6, 2010) (citing *Ragusa* and applying original ADA). The original ADA only protects "qualified individuals" who can prove "substantial limitation" of a "major life activity." *See* 42 U.S.C. § 12112(a) (1991); *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 643-44 (2d Cir. 1998).

Here, Hopkinson's diabetes and corresponding fatigue do not constitute a "substantial limitation" of any major life activity as claimed by plaintiff—interference with eating and sleeping. *See* Compl. at ¶ 16. As of July 2008, Hopkinson was not restricted from performing any job-connected activities. *See* Hopkinson Dep. at 200. She exercised regularly, and admits to not having any trouble falling or staying asleep. *See id.* at 38, 217-18. She claims she felt fatigued only about once a week, and when she did feel symptoms, they were resolved within an

hour. *Id.* at 201-02. With respect to eating, Hopkinson also testified that she did not have any problems, either generally or in the days leading up to her termination. *See id.* at 215-16, 82.

If Hopkinson followed Dr. Alaimo's instructions on the care of her diabetes, she was not likely to have experienced any adverse job-related symptoms. *See* Alaimo Dep. at 25; *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-84 (1999), *superseded by* ADAAA, Pub. L. 110-325, 122 Stat. 3553 (2008) ("Looking at the [ADA] as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is 'substantially limited' in a major life activity . . . ."). Having admitted that she did not take her medications as prescribed, Hopkinson was not "disabled" within the meaning of the ADA. *See Anyan v. N.Y. Life Ins. Co.*, 192 F. Supp. 2d 228, 244-45 (S.D.N.Y. 2002), *aff'd* 2003 WL 2153167 (2d Cir. Jul. 7, 2003) (finding that diabetes "controlled" by medication did not constitute a "disability" under the ADA); *Rivera v. Apple Indus. Corp.*, 148 F. Supp. 2d 202, 213 (E.D.N.Y. 2001) (same).

Assuming that Hopkinson was covered by the ADA or the NYHRL (Plaintiff's Sixth Claim for Relief alleges *age* discrimination for failure to provide reasonable accommodations, *see* Compl. at ¶ 65), dismissal is required. The evidence shows plaintiff was not denied any reasonable accommodation. She took allowable breaks to combat any fatigue. *See* Hopkinson Dep. at 42, 62-64, 172-74. On the morning of July 13, 2008, the plaintiff did not ask for a break, even though her supervisor, Kolody, was available to supply relief. Hopkinson Dep. at 119; Kolody Dep. at 16. She never filed a grievance with her union over a lack of breaks, and it did not protest her termination. *See id.* at 62-63; Parker Decl., Ex. G. There was no meaningful

request at the onset of her alleged drowsiness. Hopkinson's disability claims are without substance.

## III. Conclusion

Defendant's motion for summary judgment is granted. The case is dismissed.

SO ORDERED.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Date: November 18, 2010
Brooklyn, New York